# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADNAN MOHAMMED SADDELDIN, et al.,<br><br>Defendants.<br>_____/ | CASE NO. 1:10-cv-00062-AWI-SKO<br><br>**FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>(Docket No. 17)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN 15 DAYS** |

## I. INTRODUCTION

On June 20, 2010, Plaintiff G & G Closed Circuit Events, LLC, ("Plaintiff") filed the present motion for default judgment against Defendants Adnan Mohammed Saddeldin, Jay P. Ghazal, and Allen Martin, individually and dba Samba's Brazilian Steak House, also known as Samba Brazilian BBQ ("Defendants"). The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. This matter was taken under submission on July 28, 2010, pursuant to Local Rule 230(g).

## II. FACTUAL BACKGROUND

Plaintiff filed the instant action on January 1, 2010. The complaint alleges violations of 47 U.S.C. §§ 605 and 553, as well as causes of action for conversion and for violation of the

California Business and Professions Code section 17200, *et seq.*  The suit is based on Defendants' alleged unlawful interception, receipt, and exhibition of "*Affliction: 'Day of Reckoning': Featuring Fedor Emelianenko v. Andrei Arlovski*" (the "Program"), a boxing match which took place and was broadcast on January 24, 2009.  According to the complaint, Plaintiff was the exclusive commercial distributor of the Program.

Count I of Plaintiff's complaint asserts a violation of 47 U.S.C. § 605 (Unauthorized Publication or Use of Communications) alleging that Defendants knowingly intercepted, received, and exhibited the Program for purposes of direct or indirect commercial advantage or private financial gain.  Plaintiff seeks $100,000 in statutory damages as well as attorneys' fees and costs. Count II of the complaint alleges a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services) based upon the same allegations.  Plaintiff requests $50,000 in statutory damages, as well as attorneys' fees and costs.  Count III of the complaint states a claim for conversion alleging that Defendants tortiously obtained possession of the Program and wrongfully converted it for their own benefit.  As to Count III, Plaintiff seeks compensatory damages, attorneys' fees, and costs.  Count IV of the complaint alleges a violation of the California Business & Professions Code § 17200, *et seq.*  As to Count IV, Plaintiff seeks restitution, declaratory relief, injunctive relief, attorneys' fees, and costs of suit.

On March 10, 2010, the summons as to Defendants Adnan Mohammed Saddeldin, Jay P. Ghazal, and Allen Martin Ormonde, was returned showing that service of the summons and complaint was executed on February 13, 2010.  Defendants' response to the complaint was due on March 8, 2010.  On March 17, 2010, pursuant to Plaintiff's request, the clerk entered default against all individual Defendants.  On March 25, 2010, Plaintiff voluntarily dismissed Samba's Brazilian BBQ, Inc. from the case.  On June 20, 2010, Plaintiff filed this motion for default judgment against the remaining Defendants.  Defendants did not oppose the motion.

### III. DISCUSSION

**A.   Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered as follows:

    (2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to:

        (A)    conduct an accounting;
        (B)    determine the amount of damages;
        (C)    establish the truth of any allegation by evidence; or
        (D)    investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Dundee Cement Co. v. Highway Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**B.    Analysis**

Service of summons and complaint in this action was made on Defendants on February 13, 2010. A true and correct copy of the Proof of Service was filed with this Court on March 8, 2010. Defendant failed to respond to the complaint or otherwise appear in the action. The Clerk of the Court entered default against Defendants on March 17, 2010. Defendants are not infants or incompetent persons, and are not in the military service or otherwise exempted under the Soliders' and Sailors' Civil Relief Act of 1940. Declaration of Thomas P. Riley in Support of Plaintiff's Motion for Default Judgment ("Riley Decl.") at ¶ 3.

In its motion, Plaintiff seeks judgment and an award of damages pursuant to 47 U.S.C § 605(e)(3)(C)(i)(II) (statutory damages) and 47 U.S.C. § 605(e)(3)(C)(ii) (enhanced statutory damages) in the amount of $110,000 against Defendants for unlawfully intercepting, receiving, and exhibiting the Program of January 24, 2010, at their restaurant/bar. Plaintiff also seeks damages in

the amount of $800 for its state law conversion claim.

1. **Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and Enhanced Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)**

Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii). Plaintiff's Motion ("Mot.") at 6:15-17. Pursuant to Section 605(a), no person receiving or transmitting any interstate or foreign communication by wire or radio shall "divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission of reception . . . . " Those who violate this section are subject to the following civil penalty:

> The party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4)[1] of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff attests that it is a closed-circuit distributor of sports and entertainment programming that purchased and retained the commercial exhibition licensing rights to the Program at issue. Affidavit of Matthew Gagliardi ("Gagliardi Affidavit") (Doc. 18) at ¶ 3. Plaintiff marketed the sub-licensing (commercial exhibition) rights in the Program to its commercial customers. *Id.* Plaintiff contends that persistent signal piracy of its programming costs the company, its customers, and the community millions of dollars annually. *Id.* at ¶ 11. Plaintiff believes this results, in part, from the perceived lack of consequences (including nominal or minimal damage awards by the courts who hear its cases) for such unlawful interception and exhibition by the commercial signal pirates. *Id.* at ¶ 12. As such, Plaintiff requests that it be awarded the maximum allowance for statutory violations, totaling $10,000.

Plaintiff also notes that it has filed suit against these particular Defendants in another matter

---

[1] Paragraph 4 relates to persons who manufacture, assemble, modify, import, export, sell, or distribution any device or equipment knowing that the equipment is primarily of assistance in the unauthorized description of satellite cable programming. Plaintiff does not assert that Paragraph 4 is applicable in this case.

4

(Case No. 1:09-cv-2197-AWI-GSA) for similar acts of piracy. Supplemental Declaration of Thomas P. Riley ("Supp. Riley Decl.") (Doc. 17) at ¶ 4. Plaintiff contends that significant enhanced statutory damages should be awarded under Section 605(e)(3)(C)(ii) because Defendants are repeat offenders. Section 605(e)(3)(C)(ii) provides that where the court finds that a violation of the section was committed willfully and for purposes of direct or indirect commercial advantage, the court, in its discretion, may increase the award of damages "by an amount of not more than $100,000 for each violation of subsection (a) of this section." Emphasizing the need for deterrence as to these Defendants and others, Plaintiff requests that it be awarded $100,000 in enhanced statutory damages.

Here, the summons and the complaint were properly served upon Defendants, their defaults were properly entered, and the complaint is sufficiently well-pled. *See Eitel*, 782 F.2d at 1471-72. By their defaults, Defendants have admitted to willfully violating the referenced statute for the purposes of commercial advantage. *TeleVideo Sys., Inc.*, 826 F.2d at 917-18. The facts before the Court indicate that Defendants' establishment was not large, with a maximum capacity of 85 people. Armando R. Torrez, Plaintiff's investigator, noted that there was only one 60-inch flat screen television located at the far right-end of the bar on the night the Program was broadcast. Torrez conducted three (3) head-counts in the bar while he was there, with nine (9) people in each count.[2] Affidavit of Armando R. Torrez in Support of Plaintiff's Motion for Default Judgment. (Doc. 17).

Even though only nine (9) people were counted at the bar when the Program was aired, the relatively small impact of Defendants' actions must be balanced against other factors including that: (1) judgment has previously been entered against Defendants for similar acts of piracy and (2) the amount of damages awarded should be in an amount that is adequate to deter these Defendants and others from committing similar acts in the future. Considering these factors, the Court recommends that the maximum allowable statutory damages be awarded pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $10,000. The Court also recommends that enhanced statutory damages be awarded pursuant to Section 605(e)(3)(C)(ii) in the amount of $30,000.

---

[2]Torrez noted that there were 45 people in the dining area on his third head-count, but it was not established that the television was viewable from the dining area as it was located in the bar.

## 2.  Damages for Conversion

Plaintiff seeks $800 in conversion damages – the value of the property at the time of the conversion.

Under California law, conversion is the wrongful exercise of dominion over the property of another.  The elements of conversion are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.  *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005) ; *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive or intent are not relevant." *Gilman v. Dalby*, 176 Cal. App. 4th 606, 615 n.1 (2009).  Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion.  *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995) (misappropriation of intangible property without authority from owner is conversion); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp. 2d 1182, 1189 (E.D. Cal. 2005) (concluding that the right to distribute programming via satellite constituted a right to possession of personal property for purposes of a conversion claim under California law).

Here, Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the program at issue, and thus had the right to possession of the property at the time of the conversion.  Because Defendants did not legally purchase the Program, the exhibition of the fight in Samba's Brazilian Steak House on January 24, 2009, constituted conversion by a wrongful act or disposition of property rights.  Finally, the rate card for the Program at an establishment with a seating capacity of less than 100, which would apply to Defendants' establishment, indicates the sub-license fee for the Program would have been $800.  Gagliardi Affidavit, Exhibit 1.  Thus, Plaintiff is entitled to damages for conversion in the amount of $800.

///

///

///

///

## IV.  RECOMMENDATION

Based on a consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1. Plaintiff's motion for default judgment be GRANTED;
2. Judgment be entered in this action against Defendants Adnan Mohammed Saddeldin, Jay P. Ghazal, and Allen Martin, individually and dba Samba's Brazilian Steak House;
3. Damages in the total amount of $40,800 be awarded as follows:
   a. For violation of 47 U.S.C. § 605, statutory damages in the amount of $10,000;
   b. For violation of 47 U.S.C. § 605, enhanced statutory damages in the amount of $30,000;
   c. For the tort of conversion in the amount of $800.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 2, 2010**                     /s/ Sheila K. Oberto
                                                UNITED STATES MAGISTRATE JUDGE