1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC, | Case No.  1:10-cv-00062-AWI-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT DEFENDANT ORMONDE'S MOTION TO VACATE THE JUDGMENT BE GRANTED** |
| v. | |
| ADNAN MOHAMMED SADDELDIN, et al., | (Doc. 23) |
| Defendants. | **OBJECTIONS DUE:  21 DAYS** |
| _____/ | |

## I.   INTRODUCTION

On September 16, 2010, default judgment was issued against all Defendants in this action, including Defendant Allen Martin Ormonde ("Ormonde").  (Doc. 22.)  On September 9, 2013, Ormonde filed a motion to vacate the judgment pursuant to Rule 60.  (Doc. 23.)  On October 7, 2013, Plaintiff G & G Closed Circuit Events, LLC ("Plaintiff") filed an opposition, and Ormonde filed a reply on October 10, 2013.  (Docs. 24, 25.)

On October 16, 2013, U.S. District Judge Anthony W. Ishii referred this matter to the undersigned.  (Doc. 26.)  After review of the parties' briefs and supporting documentation, the Court requested Ormonde file supplemental briefing and documentation, which was filed by Ormonde on January 8, 2014.  (Doc. 28.)  Plaintiff filed a response to Ormonde's supplemental filing on January 22, 2014.  (Doc. 29.)  For the reasons set forth below, it is RECOMMENDED that Ormonde's motion to vacate the judgment be GRANTED.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On January 12, 2010, Plaintiff filed suit against Adnan Mohammed Saddeldin, Jay P. Ghazal, and Allen Martin Ormonde, individually and doing business as Samba Brazilian Steak House, also known as Samba Brazilian BBQ, and against Samba Brazilian BBQ, Inc., an unknown business entity doing business as Samba Brazilian Steak House, also known as Samba Brazilian BBQ (collectively "Defendants").  (Doc. 1.)  Plaintiff alleged that Defendants were the owners and/or operators with dominion, control, oversight, and management of a commercial establishment doing business as Samba Brazilian Steak House ("Samba") operating at 6731-37 N. Palm Avenue, Fresno, California.  (Doc. 1, ¶¶ 6-10.)    Plaintiff alleged it had the exclusive nationwide commercial distribution rights to *Affliction:  "Day of Reckoning":  Featuring Fedor Emelianeko v. Andrei Arlovski* (the "Program"), which was telecast nationwide on Saturday, January 24, 2009.  (Doc. 1, ¶ 12.)  Plaintiff alleged that Defendants unlawfully and willfully intercepted the Program and exhibited it at their commercial establishment.  (Doc. 1, ¶¶ 15-16.) Plaintiff asserted that exhibition of the Program was in violation of 47 U.S.C. §§ 553 and 605, constituted conversion under California law, and violated the California Business and Professions Code.

Plaintiff filed executed summonses as to the individual defendants.  (Docs. 6-8.)  As it pertains to Ormonde, the executed summons was filed with a declaration of a process server indicating Ormond's "[r]esidence address was not known at the time of service."  (Doc. 8, p. 2.) The declaration also indicates service was attempted three times at the business address of 6731-37 North Palm Avenue, Fresno, California.  (Doc. 8, p. 2.)  Service was attempted at 7:00 p.m. on February 10, 2010, at 11:04 a.m. on February 11, 2010, and at 6:29 p.m. on February 13, 2010. On February 10, 2010, it was noted that Ormonde was "NOT IN (BUSINESS) PER MANAGER." On February 11, 2010, the declaration states Ormonde was "NOT IN (BUSINESS)."  On February 13, 2010, the declaration shows that Ormonde was "NOT IN (BUSINESS) PER JAY P. GHAZAL, PERSON IN CHARGE."  Thus, on February 13, 2010, after a third unsuccessful attempt to serve at the business address, substitute service was made on Jay P. Ghazal, the person apparently in charge, who was instructed to deliver the documents to Ormonde.

1    After failing to respond to the complaint, the default of each individual Defendant was

2  entered, and a motion for default judgment was filed on June 20, 2010.  (Doc. 17.)  On August 2,

3  2010, the undersigned made findings and recommendations that default judgment be granted,

4  which was adopted by the district court on September 16, 2010, and judgment was entered in

5  favor of Plaintiff and against each Defendant.  (Docs. 21, 22.)[1]

6    On September 10, 2013, Ormonde filed a motion to vacate the judgment, asserting that the

7  service of process on him was improper and void, and the judgment against him must be vacated

8  pursuant to Federal Rule of Civil Procedure 60(b)(4).  The parties submitted supplemental briefing

9  on January 8 and 22, 2014, and Ormonde's motion was submitted for decision without a hearing.

10 (*See* Docs. 27, 28, 29.)

11                          **III.   DISCUSSION**

12 **A.    The Parties' Arguments**

13        **1.    Defendant Ormonde's Motion**

14    Plaintiff asserts service was improper because it was made via substitute service to Samba

15 in January 2010, years after Ormonde's last connection with the corporation that did business as

16 Samba.  The proof of service completed by the process server indicated Ormonde's residential

17 address was unknown at the time of service.  (Doc. 23-3, 2:3-8.)  Ormonde asserts this statement

18 reflects that "plaintiff made no effort to locate" him because he has lived at his residence since

19 1995, which is a matter of public record.  (Doc. 23-3, 2:4-7.)   In sum, Ormonde contends

20 Plaintiff's election to serve him via substitute service in February 2010 at a business where

21 Ormonde had no involvement for more than three years did not satisfy due process and the service

22 of process was invalid.

23        **2.    Plaintiff's Opposition**

24    Plaintiff maintains substitute service upon Ormonde was proper.  Plaintiff attempted to

25 serve Ormonde on three occasions at the Samba address.  After three unsuccessful attempts to

26 personally serve Ormonde at the Samba address, Plaintiff effectuated service by leaving it with a

27

28 ---
[1] "Samba Brazilian BBQ, Inc." was voluntarily dismissed from the lawsuit on March 29, 2010, and no judgment against it was entered.  (Doc. 14.)

1    person apparently in charge at Samba's, i.e., Jay P. Ghazal.  Plaintiff then mailed the service

2    documents to Samba's, where the service papers were left.

3        Plaintiff asserts that a "usual place of business" includes a defendant's "customary place of

4    employment as well as his own business enterprise."  Judicial Council Comment to Cal. Code Civ.

5    Proc. § 415.20(b).  Plaintiff contends it had a reasonable belief that Samba was Ormonde's

6    "business enterprise" because the California Department of Alcoholic Beverage Control ("ABC")

7    liquor license for Brazilian BBQ, Inc. identifies Ormonde as the "Secretary/Asst Sec." of Brazilian

8    BBQ, Inc., and that the corporation was doing business as "Samba Brazilian BBQ, Inc." located at

9    6731-37 N. Palm Avenue in Fresno.  (Doc. 24, 5:2-17.)  Ormonde is further identified on the

10   license as a stockholder of Brazilian BBQ, Inc.  The license was issued originally on March 22,

11   2006.  Plaintiff asserts it is entitled to rely upon this information in completing service of process.

12   Plaintiff also contends that, because there is no hierarchy of service requiring an attempt to serve

13   at a person's residence, it is irrelevant that Ormonde's residential address was a matter of public

14   record at the time of service.  (Doc. 24, 6:11-20.)

15       Finally, although Ormonde states no one associated with Samba or Brazilian BBQ, Inc.

16   was authorized to receive process on his behalf, such authorization is not required under California

17   law.  (Doc. 24, 6:22-7:6.)

18       **3.    Defendant Ormonde's Reply**

19       Ormonde responds that there is nothing in the process server's declaration showing

20   Plaintiff attempted to identify Defendant's principal residence, his usual abode, or his primary

21   business.  Plaintiff relied on the liquor license for the Brazilian BBQ, Inc., but the license shows

22   only that Ormonde was an officer and a stockholder of the corporation.  The fact that Ormonde

23   was an officer or stockholder of Brazilian BBQ, Inc. does not mean Samba Brazilian Steak House

24   was his usual place of business.  (Doc. 25, 2:18-26.)

25       Further, the proof of service indicates Ormonde was no longer in that business, and at that

26   point the process server should have made efforts to identify other locations to attempt personal

27   service.  Ormonde maintains the process server did not exercise reasonable diligence in assessing

28   his usual place of business, particularly because a simple property search would have clearly

4

identified Ormonde's residence as well as the fact that he worked primarily as an insurance agent. (Doc. 25, 3:5-9.)  In support of his argument, Ormonde cites *Zirbes v. Stratton*, 187 Cal. App. 3d 1407, 1416 (1986), noting in that case the defendant was served via substitute service at her parent's house, which was listed on her driver's license as her residential address.  The court concluded this address was not a proper place to effect substitute service because it was not actually her domicile.  Ormonde asserts the liquor license in this case is analogous to the driver's license in *Zirbes*.  Even more compelling in this case, unlike the defendant's driver's license in *Zirbes*, is the fact that Ormonde had no control over how the liquor license was completed or what information it contained.  Plaintiff presented no documentation establishing Samba was actually Ormonde's usual place of business or that the process server attempted to identify any other location to personally serve him.

**4.      Ormonde's Supplemental Information**

At the Court's request, Ormonde submitted additional information in an attempt to establish that, at the time of service, he had no connection or affiliation with Brazilian BBQ, Inc. or Samba.  Ormonde submitted the following documents:  (1) Exhibit C – "Settlement Agreement and Mutual Release" for the sale of his shares in Brazilian BBQ, Inc. (Doc. 28-2, p 4-9); (2) Exhibit D – "Acknowledgment of Receipt" of original stock certificates by Jay Ghazal dated April 7, 2006 (Doc. 28-2, p. 14); and (3) Exhibit E – "Assignment Separate from Certificate," purporting to be an assignment of interest of any and all shares of common stock in Brazilian BBQ, Inc., dated May 3, 2006 (Doc 28-2, p. 16).  Ormonde contends these documents establish he was not a stockholder in Brazilian BBQ, Inc. at the time Plaintiff served the complaint in February 2010.

**5.      Plaintiff's Response to Ormonde's Supplemental Supporting Documentation**

Plaintiff asserts Ormonde's supplemental documentation is either hearsay or has not been properly admitted and thus does not constitute strong and convincing evidence to rebut the presumption of valid service.  Further, the Settlement and Mutual Release document purports it was executed on April 27, 2006, but no dates are associated with the signatures on the document, and thus there is no way to corroborate it was actually executed on April 27, 2006.  The receipt

from Jay Ghazal acknowledging possession of Ormonde's 1,500 original stock certificates is not sworn, and Plaintiff maintains the document is irrelevant because it does not establish actual transfer of interest in the stock. Finally, Ormonde's assignment of interest in the stock is not sworn and has a printed date of May 3, 2006. Additionally, Ormonde stated in his original declaration he had no contact or communication with Mr. Ghazal or anyone else associated with Samba after the settlement on April 27, 2006, but the date on this document belies that assertion. In sum, Plaintiff maintains none of the supplemental documentation is reliable evidence that Ormonde's interest in Brazilian BBQ, Inc. was 100 percent liquidated on April 27, 2006.

**A.      Legal Standards**

**1.      Federal Rule of Civil Procedure 60**

"A final judgment is 'void' for purposes of Rule 60(b)(4) only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law." *United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999) (internal citation omitted). If a party is not properly served, any judgment against that party is void. *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992).

Unlike other bases for relief under Rule 60, no time limit exists to bring a motion to vacate a judgment as void pursuant to Rule 60(b)(4). *See Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987); *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003) ("[I]t has been oft-stated that, for all intents and purposes, a motion to vacate a judgment as void may be brought at any time.") (internal quotation marks and citation omitted).

**2.      Service of Process Pursuant to Federal Rule of Civil Procedure 4**

Pursuant to the Federal Rules of Civil Procedure, a plaintiff may use the procedures of the state in which the district court is located to serve a summons and complaint. Fed. R. Civ. P. 4(e)(1). In California, plaintiffs may serve an individual in person or by using alternative substitute methods. Cal. Civ. Proc. Code §§ 415.10-415.50. Substitute service may be made on an individual only after attempting to personally serve the defendant with "reasonable diligence." Cal. Civ. Proc. Code § 415.20(b).

1    Pursuant to California Code of Civil Procedure § 415.20(b),

2    If a copy of the summons and complaint cannot with reasonable diligence be
     personally delivered to the person to be served, . . . a summons may be served by
3    leaving a copy of the summons and complaint at the person's dwelling house, usual
     place of abode, usual place of business, or usual mailing address . . . in the presence
4    of a competent member of the household or a person apparently in charge of his or
     her office, place of business, or usual mailing address . . . , at least 18 years of age,
5    who shall be informed of the contents thereof, and by thereafter mailing a copy of
     the summons and of the complaint by first-class mail, postage prepaid to the person
6    to be served at the place where a copy of the summons and complaint were left.

7

8    "Ordinarily, . . . two or three attempts at personal service at a proper place should fully satisfy the

9    requirement of reasonable diligence and allow substitute service to be made."  *Bein v. Brechtel-*

10   *Jochim Grp., Inc.*, 6 Cal. App. 4th 1387, 1391-92 (1992).  In the context of substitute service, a

11   proper place for service is either "at the person's dwelling house, usual place of abode, usual place

12   of business, or usual mailing address other than a United States Postal Service post office box."

13   Cal. Code Civ. Proc. § 415.20(b).

14        "To be constitutionally sound the form of substitute service must be 'reasonably calculated

15   to give an interested party actual notice of the proceedings and an opportunity to be heard . . . [in

16   order that] traditional notions of fair play and substantial justice implicit in due process are

17   satisfied.'"  *Zirbes v. Stratton*, 187 Cal. App. 3d 1407, 1417 (1986).   Substitute service is

18   reasonably calculated to give an interested party actual notice when service is "made upon a

19   person whose 'relationship with the person to be served makes it more likely than not that they will

20   deliver process to the named party."  *Bein*, 6 Cal. App. 4th at 1392 (internal quotation marks and

21   citation omitted).

22   **C.    Analysis**

23        **1.    Reasonable Diligence**

24        "[A] signed return of service of process constitutes prima facie evidence of valid service

25   which can be overcome only by strong and convincing evidence."  *SEC v. Internet Solutions for*

26   *Bus. Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007).  Here, Plaintiff filed the declaration of a process

27   server attesting that personal service on Ormonde was unsuccessfully attempted on three occasions

28   at 6731-37 North Palm Avenue, Fresno California, the business address of Samba.  (Doc. 8.)

1   Substitute service pursuant to California law was completed on February 13, 2010, by leaving a

2   copy of the complaint and summons with Jay P. Ghazal at 6731-37 North Palm Avenue, and a

3   second declaration indicates the service documents were then mailed to 6731-37 North Palm

4   Avenue in Fresno.  (Doc. 8, p. 2-3.)  These declarations constitute a prima facie showing that

5   service was valid.  Thus, Ormonde must present strong and convincing evidence to overcome the

6   presumption of valid service.  *Id.*

7   Ormonde argues substitute service was invalid because Plaintiff failed to exercise

8   reasonable diligence in attempting to personally serve him before resorting to substitute service.

9   Ormonde asserts the information on the liquor license showing he was an officer and stockholder

10  of Brazilian BBQ, Inc. did not provide a reasonable basis for Plaintiff to attempt personal service

11  at the location of a business owned by Brazilian BBQ, Inc. when Ormonde's residential address

12  was readily and publicly available.  In support of his motion, Ormonde submits a grant deed

13  recorded on October 27, 1995, listing him as the grantee of real property located at 1603 E.

14  Waterford Avenue in Fresno, California.  (Doc. 23-4, Exhibit A.)[2]  In his declaration, Ormonde

15  states that he purchased this property in October 1995 and has resided continuously at that location

16  since October 1995.  (Doc. 23-2, Ormonde Decl., ¶¶ 3-5.)   According to Ormonde, Plaintiff's

17  failure to locate his residential address and attempt personal service at that location establishes a

18  lack of reasonable diligence.

19  Plaintiff correctly notes that California law does not impose a hierarchy that requires

20  attempted personal service at Ormonde's residence or place of abode.  Plaintiff contends the basis

21  for attempted personal service of Ormonde at Samba was a liquor license filed with the California

22  Department of Alcoholic Beverage Control.  The license was issued to Brazilian BBQ, Inc. with

23  an address of 6731-37 N. Palm Avenue, Fresno, California.  The license identifies Ormonde as an

24  officer and stockholder of Brazilian BBQ, Inc. which, according to the license, was doing business

25  as "Samba Brazilian BBQ, Inc."   Plaintiff argues the information on the license provided a

26  reasonable basis to assume that Ormonde could be personally served at Samba (also known as

27

28  [2] The Court takes judicial notice of the grant deed recorded with the Fresno County Recorder's Office, as it is a matter of public record. Fed. R. Evid. 201; *see also Sears, Roebuck & Co. v. Metro. Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).

8

1  "Samba Brazilian BBQ, Inc.") located at 6731-37 N. Palm Avenue.  The process server made

2  several attempts at personal service at that location, which Plaintiff maintains establishes

3  reasonable diligence for purposes of personal service.

4        Reasonable diligence may include two or three attempts at personal service, *Bein*, 6 Cal.

5  App. 4th 1387, 1391-92 (1992), obtaining a forwarding postal address from the U.S. Postal

6  Service and leaving the summons with a proper agent at that address, *Ellard v. Conway*, 94 Cal.

7  App. 4th 540, 547 (2001), or any other method "reasonably calculated to provide [the defendant]

8  with actual notice of the action," *Espindola v. Nunez*, 199 Cal. App. 3d 1389, 1392 (1988).

9  Because personal service is preferred to substitute service, the party attempting service must show

10  "that the summons and complaint 'cannot with reasonable diligence be personally delivered' to the

11  individual defendant."  *Am. Express Centurion Bank v. Zara*, 199 Cal. App. 4th 383, 389 (2011).

12  Under the circumstances of this case, Ormonde demonstrates by strong and convincing evidence

13  that Plaintiff's attempt at personal service was not reasonably diligent.

14        Plaintiff is correct that California law does not require service be attempted at a residential

15  address prior to undertaking substitute service.  However, reasonable diligence in attempting

16  personal service is not shown where the residential address of a defendant is readily and publicly

17  available, but the plaintiff elects to attempt personal service at a business location with only a

18  tangential and presumptive connection to the defendant.  Here, there was no showing by Plaintiff

19  regarding the attempt to locate Ormonde's residential address; there is only a statement by the

20  process server that it was unknown at the time of service.  The recorded grant deed submitted by

21  Ormonde establishes that his residential address was publicly available at the time of service.  In

22  light of the grant deed, the process server's bare statement that Ormonde's residential address was

23  unknown is insufficient to establish reasonable diligence.  *See Sanford v. Smith*, 11 Cal. App. 3d

24  991, 999 (1970) ("Declarations devoid of averment of facts personally known to the declarant to

25  be true . . . have consistently held to be insufficient . . . ").  Moreover, the liquor license showed

26  only that Ormonde had an ownership interest in Brazilian BBQ, Inc. through stock ownership, and

27  Brazilian BBQ, Inc., in turn, according to the liquor license, owned some portion of Samba where

28  personal service of Ormonde was attempted.

There is no bright-line rule, however, that the exercise of reasonable diligence requires service first be attempted at an individual defendant's residence or that a residential location is necessarily a more reasonable location for service than a business location.  Had no information other than the liquor license been readily available to locate Ormonde, attempts at personal service at Samba may have constituted reasonable diligence.[3]  For example, in *Commercial Judgment Recovery Fund 1 LLC v. A2Z Plating Co., Inc.*, No. SACV 11-5072 DOC (RNBx), 2011 WL 2941029, at *4 (C.D. Cal. July 15, 2011), the court concluded no attempt at personal service was reasonably diligent where a private investigator had unsuccessfully searched for the defendant's residential address, but was able to discover that the defendant was the president and registered agent for service of process for a California corporation and substitute service was made at that location.[4]

Similarly, in *Hearn v. Howard*, the plaintiff attempted to personally serve the defendant at a business address on her letterhead that also matched the address she reported to the California State Bar, which was not an office, but rather, a private post office box at a rental store.  177 Cal. App. 4th 1193, 1203 (2009).  After the process server made unsuccessful attempts to personally serve the defendant at the mailbox, the server left the documents with the mail store clerk and subsequently mailed the documents to the same address.  The court held the attempts at personal service at the mailbox constituted reasonable diligence and substitute service was valid, but specifically noted there was no evidence a better service method was available.  *Id.*

Likewise, in *Ellard*, personal service was attempted at a private/commercial mailbox and subsequent substitute service at the mailbox store was deemed valid.  94 Cal. App. 4th at 540. There, the process server had first attempted service at the defendants' residential address, learned they had moved, and the plaintiffs' counsel called the U.S. Postal Service to obtain the defendants' forwarding address, which was listed as the private post office box.  In concluding that substitute service at the mail box store was valid, the court specifically noted that "no facts suggested

---

[3] The Court makes no finding, however, that Ormonde had any interest in Samba at the time of service.

[4] Notably, in this case the defendant had actual notice of the lawsuit, and the service statute was given liberal construction.

1  personal or substitute service was available at any other address or on any other individual." *Id.* at

2  545.

3         Here, however, Plaintiff does not indicate what attempts were made to locate Ormonde or

4  his residential address which would have been a location more reasonably calculated to give actual

5  notice than attempted service at Samba, a business with only a suspected connection to Ormonde

6  through information contained in a liquor license.  Reasonable diligence is not shown by ignoring

7  or failing to investigate the most relevant and logical place to effect personal service on a

8  defendant, and instead undertaking service at a more obscure location with only a suspected

9  connection to the defendant, diminishing the likelihood of accomplishing personal service and

10 giving actual notice of the lawsuit.[5]

11        Ormonde has sufficiently rebutted the presumption of valid service with strong and

12 convincing evidence that his residential address was publicly available at the time of service and

13 thus, the process server's declaration does not establish reasonable diligence for purposes of

14 personal service under these circumstances.  *Evartt v. Super. Ct.*, 89 Cal. App. 3d 795, 801 (1979)

15 (reasonable diligence analysis is fact-specific and "[n]o single formula nor mode of search can be

16 said to constitute due diligence in every case." (quoting *Donel, Inc. v. Badalian*, 87 Cal. App. 3d

17 327, 333 (1978))).

18                              **b.      Substitute Service at Samba**

19        The parties also dispute whether Samba constituted Ormonde's "usual place of business"

20 for purposes of substitute service under California Code of Civil Procedure § 415.20(b); and even

21 if Samba were considered Ormonde's "usual place of business" due to his stock interest and role as

22 an officer in Brazilian BBQ, Inc., the parties dispute whether Ormonde actually had any

23 ownership interest in Brazilian BBQ, Inc. at the time of service.  These disputes, however, are

24

25 [5] Plaintiff also argues "the process server was informed that Mr. Ormonde was no longer in that business."  (Doc. 25,
   3:2-3.)  However, the proof of service and declaration of diligence states the process server was informed that Mr.
26 Ormonde was "Not In (business)."  This is not necessarily a notation establishing the process server was informed Mr.
   Ormonde was no longer associated with the business, only that he was not "in" that day.  (*See* Doc. 8, p. 2.)
27 Additionally, Ormonde's declaration states the process servicer noted he was unable to verify employment of
   Ormonde at the business location where service was attempted, but this statement is not actually in the process
28 server's declaration in this case.  (*Compare* Doc. 23-2, Ormonde Decl., ¶ 21 *with* Doc. 8, p. 2.)  This appears to have
   been taken from the process server's declaration in a related case.  *See* No 1:09-cv-2197-AWI-GSA, Doc. 9, p. 2.).

moot because of the lack of reasonable diligence in attempting personal service, which is the necessary prerequisite to valid substitute service and dispositive as to Ormonde's motion. *Evartt*, 89 Cal. App. 3d at 802 ("We conclude that the substitute abode service on petitioner was ineffective and void because real party failed to comply with the mandatory prerequisite to such service by exercising reasonable diligence to effect personal service."). As such, the Court does not address these alternative arguments.

### c.      The Court Lacked Personal Jurisdiction Over Ormonde to enter Judgment

A court cannot exercise personal jurisdiction over a defendant without proper service of process. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been properly served under Fed. R. Civ. P. 4"). Moreover, a judgment is void where the requirements for effective service have not been met. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992); *Veeck v. Commodity Enters.*, Inc., 487 F.2d 423, 426 (9th Cir. 1973). As substitute service was invalid, the Court lacked personal jurisdiction over Ormonde and the subsequent judgment against him should be declared void and vacated pursuant to Federal Rule of Civil Procedure 60(b)(4).

### IV.      CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS that Ormonde's motion to vacate the judgment against him be GRANTED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the

specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **February 18, 2014**              **/s/ Sheila K. Oberto**
                                                 UNITED STATES MAGISTRATE JUDGE